No. 14.—EVERARD H. RICHARDSON, plaintiff in error vs. JOHN KEERLY, defendant in error.

The rule, as to what is the measure of damages for the breach of a bond, conditioned to make titles to a lot of land, forfeited to the State, under the Act of 1813, is that which was laid down in this case, when this case was in this Court before. *See* 17 *Geo. Rep.*, 602.

In Equity, from Polk Superior Court. Tried before Judge HAMMOND, April Term 1856.

The facts in this case are, that John Keerly had given a bond for titles to one Harper, conditioned to execute good titles to a large settlement of land, consisting of many contiguous 40 acre lots, situated in the county of Paulding. The bond was dated 9th October 1838, and titles were to be made by the 25th December 1839, or on the payment of the last installment of the purchase money. The price to be paid for the land, was twelve dollars and a half per acre.

Harper purchased the land for defendant Richardson, and one Cowdry, who substituted their notes for Harper's, and took an assignment of Keerly's bond, and divided the land—Richardson going into possession of his part in 1838 or 1839, and has remained in possession ever since.

Keerly had executed titles to all the land except one lot, No. 796, in the 2d district, 4th section, which, in the division,

fell or was assigned to Richardson. Keerly had no valid title to this lot—he had the conveyance from the *drawer*, but a grant had never issued, and under the Act of 21st December 1843, the lot had reverted to the State, and Richardson having applied and paid the fee of $25 00, obtained the grant from the State to this lot.

Keerly brought suit on one of the notes given for the land, and the only one remaining unpaid, and this bill was filed to enjoin that action, and claiming that the note should be credited with the value of the reverted lot.

Complainant proposed to prove the value of lot No. 769, at the time of the breach of the contract, and also at the time of the trial, and at different times between these periods, which testimony was repelled by the Court, on the ground that it was not pertinent; that complainant could only recover, or was entitled to a credit of twenty-five dollars, the amount paid for the grant, and his necessary expenses in obtaining the same. To which decision complainant excepted.

Upon this ruling of the Court, the parties agreed upon the sum of fifty dollars, as the amount paid for the grant and expenses, to be allowed as a credit on the note.

Complainant's counsel requested the Court to charge the jury, that if they believed that Richardson had asked Keerly in good faith, to grant the lot, and Keerly refused to do so, and Richardson then granted it, that Richardson was entitled to the benefit, and they should find for complainant the value of the land at the time of the breach, and enjoin the action at law to that extent.

And also to charge the jury that by the Acts of the General Assembly regulating the granting of lots, the benefit was confined exclusively to citizens of this State, and as it was admitted that defendant was a citizen of Alabama, the granting of the lot could not enure to his benefit, but only to a citizen of this State, and that therefore, the grant fee and expenses were not the measure of damages; and that if Rich-

ardson in good faith, purchased in the outstanding title in fee, to protect and save himself from damage, he had the right to do so, without waiting for a recovery, and the measure of damages against Keerly would be the purchase money with interest, or the *value* of the land at the time of the breach.

All of which charges the Court refused to give, but held, that the principle regulating the amount or extent of damage in this case, had been established and settled by the Supreme Court, (*see this case*, 17 *Geo. Rep.*, 602,) and charged the jury that complainant was entitled to a deduction only to the amount paid by him for the grant and his expenses in obtaining the same. Whereupon a decree was rendered, allowing a deduction of fifty dollars from the note sued on.

To which charge and refusal to charge, counsel for complainant excepted.

A. R. WRIGHT, for plaintiff in error.

CHISLOM, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

This case was once before in this Court, and it presents the same questions now, which it presented then. And the answer that we then gave to those questions, we now again give, and with increased confidence. 17 *Geo. Rep.* 602.

The argument for the plaintiff, the vendee, may be thus briefly stated:

1st. The vendee (the plaintiff,) is entitled to compensation from the vendor, (the defendant,) for his loss occasioned by the vendor's breach of his bond, whatever that loss may be.

2d. If the vendor had not broken his bond, the vendee would have acquired the whole interest in the land.

3d. The vendor broke his bond, and by reason of his doing so, the vendee was evicted in law, from the land.

4th. The vendee, by being thus evicted from the land, was

Richardson vs. Keerly.

prevented from acquiring *any* interest under the bond, in the land.

5th. His loss therefore, occasioned by the breach of the bond, is a loss of the *whole* interest in the land.

6th. Nothing short of the value of the land, can be the measure of compensation for such a loss.

The first of these propositions is, no doubt true.

The same may be said of the second.

The *conclusion* from the third is not, in my opinion, true. The Act of 1843 (the forfeiting-draw act) does not, *per se,* in my opinion, work the eviction of any tenant "in possession." *See section* 4 *of the Act, Cobb's Dig.* 707. But yet, this conclusion may be admitted to be true, for the sake of the argument.

The fourth, is by no means true.

The vendor, acquired by virtue of the bond, valuable interest in the land, even if it be admitted, that he was, by the operation of the Act aforesaid, evicted from the land.

1st. He acquired, by virtue of the bond, the *preemption* right to the land, to be exercised on the terms prescribed by the act aforesaid. By virtue of the bond he became the "tenant in possession" of the land, nay the tenant in possession under the drawer, for his vendor, (the obligor,) held under the drawer. The terms of sale prescribed by the Act, were, that any of the lots contemplated by the Act, might be had for $2000, after the first of October 1844; for $1500 after the first of November thereafter; for $1000 after the first of December thereafter ; for $500 after the first of January 1845; for $250 after the first day of May thereafter; for $100 after the first day of July thereafter; for $25 after the first day of September thereafter; and for $5 after the first day of January thereafter. By virtue of the bond, the vendee (the plaintiff,) acquired the *prior* right to purchase the land on these terms.

Of what value to him was this right of priority? It is impossible to tell, but it must have been of much value, if dis-

creetly used. A discreet use of it, would, it is probable, have kept off all competitors, and it is likely that he did use it discreetly, for he bought in the land under the Act at $25. One of two things must be true, either $25 was the full value of the land, or although $25 was less than its full value, he was enabled, by virtue of the advantage which his right of preemption gave him, to purchase it at $25, for the land was exposed to a sort of sale, at which all citizens might become purchasers, for nearly a year before he purchase d it, and yet no higher offer was made for it than twenty-five dollars.

2d. By virtue of the bond, he acquired the enjoyment of the land, and the *right* to that enjoyment, from the date of the bond until the first of October 1844, (or rather as I say, until he bought the land from the State at $25, which was on or after the first of September 1845) a period of six years (or seven.)

What was a term of six or seven years in the land worth ? It was certainly worth something, it might have been worth a good deal. The worth, whatever it was, was due to the bond—was derived from the defendant.

The proposition is not true then, that the plaintiff, by being evicted from the land, was prevented from acquiring *any* interest under the bond, in the land. A proposition far nearer the truth, no doubt, would be, that he acquired, under the bond, such an interest in the land, as enabled him to buy it for $25.

The argument for the plaintiff, then, is not satisfactory.

There is another fact in this case, which tells, in some degree, against the plaintiff's right to recover more than his actual damage. The defendant, after selling him the land, moved into Alabama, and it was not until the 13th of August 1845, that the plaintiff wrote to him, that the lot was an ungranted one ; three weeks after the date of the letter, the plaintiff had obtained a grant for the lot to himself. Why this tardiness before the date of the letter, and this haste after the date of it ? Especially, may these questions be asked

in view of the fact, that the purchase money for the lot, though long due, was lying over. If an offer to pay this had been made when it fell due, the defendant's attention would have been called to the ungranted state of the lot, and he could have taken out the grant under the old law, for the mere price of a grant.

We affirm the judgment of the Court below.

*See Bush vs. Marshall,* 6 *How.* 284.

Judgment affirmed.