## MITCHELL *v.* OWEN.

1. The ground of the petition for certiorari designated " (a) " contends that the Court of Appeals erred, "In holding and in deciding that where the plaintiff sued the defendant for the purchase-price of land bargained to him, and the defendant pleaded that he had resold the land at a profit and had tendered the full balance due on the contract, and that the plaintiff had at that time refused to make him a deed, the defendant could recoup as against the purchase-price the difference between the price he was to pay and the price at which he resold it, notwithstanding it undisputedly appeared that the defendant had entered into and had continuously maintained possession of the land up to the time of the trial, and it also undisputedly appeared that at the time the contract of sale was made the seller had no knowledge or notice that a contract of resale was contemplated, but was informed to the contrary by the purchaser." An examination of the record fails to verify the accuracy of the statements in this ground. It is therefore without merit.

2. The ground of the petition designated as " (b) " complains that the Court of Appeals erred, "In refusing to follow, as precedent binding on the Court of Appeals, the decision of the Supreme Court on certified question in *King* v. *Brice*, 145 *Ga.* 65 (3), holding that the measure of damages for a breach of contract of sale of land is the difference between the contract price and the market value of the land at the time of the breach, and erred in holding (if under the proven facts the defendant could recoup at all or more than normal damages) the defendant's recoupment was not limited to the difference between the contract price and the market value of the land at the time of the breach." It was not error to fail to apply, without qualification, the rule laid down in the above-cited case.

3. The ground of the petition designated as " (c) " complains that the Court of Appeals erred, "In holding and deciding that it was not reversible error for the trial judge to charge the jury that if the plaintiff breached the contract by refusing to make a deed at the time he was obligated by the contract to make it, but later tendered the deed, the measure of damages which the defendant might recoup against the plaintiff's action was the difference between the value of the land on the date that the deed should have been made and its value at the time when the plaintiff tendered the deed." Under the facts of this case this rule, without qualification, was erroneous, and requires a reversal of the judgment refusing a new trial.

4. In the ground of the petition designated " (d) " it is contended that the Court of Appeals erred, "In holding and deciding that where the movant in a motion for new trial (the plaintiff in error here) assigned error upon an excerpt from the charge which contained certain propositions which were correct and certain propositions which were erroneous, the assignment of error was not sufficient within the purview of the rule stated in *Miller* v. *State*, 121 *Ga.* 135 (48 S. E. 904), and *Anderson* v. *Southern Ry. Co.*, 107 *Ga.* 500 (33 S. E. 644), notwithstanding the movant added to his general assignment of error further assignments specifically pointing out wherein the instruction excepted to was erroneous." This ground is not borne out by the record, and is without merit.

5. "In considering the question of the grant of the petition for certiorari, and, if granted, in disposing of the case, this court will only consider the questions raised in such petition."

No. 4274. JANUARY 20, 1925. ADHERED TO ON REHEARING, FEBRUARY 28, 1925.

Certiorari; from Court of Appeals. 31 *Ga. App.* 649.

*J. F. Redding* and *Little, Powell, Smith & Goldstein*, for plaintiff.

*Cleveland & Goodrich*, for defendant.

GILBERT, J.   Mitchell and Owen made the following contract: "This agreement made and entered into this Aug. 24, 1918, witnesseth: That for and in consideration of $25.00 this day paid by E. M. Owen to W. H. Mitchell, receipt whereof is hereby acknowledged, the said W. H. Mitchell hereby agrees to deed to the said E. M. Owen lots 43 and 44 in 9th district, Pike County, Georgia, by Dec. 1st, 1918, for the sum of ($12,000.00) twelve thousand dollars." On March 14, 1922, Mitchell filed suit against Owen for the balance, $11,975.00. The petition, as amended, alleges in substance that on November 28, 1918, petitioner became unconscious and was for some time, because of his physical and mental condition, confined in sanitariums at Atlanta and Milledgeville; that during this time petitioner was mentally and physically unable to transact any business of any kind, and for this reason did not make a deed to the defendant on December 1st, 1918; that upon regaining his health and returning home petitioner found that defendant had taken possession of the land; that defendant had cultivated the land for three years and refused to pay for the same; that petitioner considers himself bound by the contract of August 24th, 1918; that he has never refused to comply with the same, and tenders to the defendant a deed properly executed conveying the property.   The answer of the defendant admitted the execution of the contract quoted, but averred that by the terms of

the contract plaintiff covenanted and contracted to execute and deliver to defendant, by December 1, 1918, a deed to said lands for the sum of $12,000; that defendant had fully complied with the terms of said contract, had made every effort possible to obtain a deed from plaintiff, had tendered the purchase-money to plaintiff in every way possible, by letter mailed to plaintiff at his proper address, by personally carrying the money to the place of business and home of plaintiff, by personally going to the sanitarium in Atlanta where plaintiff was confined, where he informed plaintiff's physician of his desire to tender the money to the plaintiff; that the physician refused to permit defendant to see or speak with plaintiff; that the wife, relatives, and business associates of plaintiff were advised by defendant of his desire to close the trade; and that these acts upon the part of defendant were a legal tender of the purchase-money. The answer further sets up that defendant was very anxious to close the trade, because he had sold the land to a responsible party for $20,000, had received from such party a payment of $1000 upon the same, and had agreed to execute and deliver to such party a deed conveying the land by January 1, 1919; that plaintiff knew that defendant had sold the land at an advanced price; that plaintiff had continuously from December 1, 1918, to Sept. 1, 1921, breached his contract by failing and refusing to convey the property to defendant; that in consequence defendant had lost the sale of the land and the profit of $8000 which would have accrued to him therefrom, and had been compelled to return to the prospective purchaser the $1000 received from him; that the reasonable market value of said land on December 1, 1918, was $20,000, and on September 1, 1921, the same was worth only $7000; that it was only after this great slump in the market value of the land that plaintiff had, on September 1, 1921, expressed any intention of complying with his contract; that on October 1, 1921, defendant had made to plaintiff an absolute, unconditional tender of $4000, with interest from December 1, 1918, in settlement of the purchase-price of said land, and as the amount to which plaintiff was legally entitled on account of said purchase. Because of these facts defendant pleaded that he be permitted to recoup his damages, which he fixed at $8000, and that the same be deducted from the purchase-price of the land as sued for.

Upon the trial of the case the jury returned a verdict finding

for the plaintiff $3975, with interest. The motion for a new trial filed by plaintiff was overruled, and he carried the case to the Court of Appeals where the judgment of the court below was affirmed. 31 *Ga. App.* 649 (121 S. E. 699). The case is here upon writ of certiorari.

1. The ground of the petition for certiorari designated "(a)" contends that the Court of Appeals erred, "In holding and in deciding that where the plaintiff sued the defendant for the purchase-price of land bargained to him, and the defendant pleaded that he had resold the land at a profit and had tendered the full balance due on the contract, and that the plaintiff had at that time refused to make him a deed, the defendant could recoup as against the purchase-price the difference between the price he was to pay and the price at which he resold it, notwithstanding it undisputedly appeared that the defendant had entered into and had continuously maintained possession of the land up to the time of the trial, and it also undisputedly appeared that at the time the contract of sale was made the seller had no knowledge or notice that a contract of resale was contemplated, but was informed to the contrary." An examination of the record fails to verify the accuracy of the statements in this ground. Were this the sole ground for certiorari, the writ would be dismissed. *Jones* v. *Pacific Fire Insurance Co.,* 159 *Ga.* 248 (125 S. E. 470). The Court of Appeals, in stating the substance of the plea filed by the defendant Owen, said: "Owen pleaded that he resold the land at a profit and tendered the full balance on the contract, that Mitchell refused to make a deed to him as provided by the contract, and that he lost the difference between the price he was to pay for the land and the price at which he sold it; and he prayed for damages for this amount." Nevertheless, in the decision rendered by the Court of Appeals it was not stated that the loss of profit by a resale affected or could affect in any way the damages claimed by Owen. By reference to the charge to the jury by the trial judge, and the grounds of the motion for a new trial, it appears that this was not the rule adopted for measuring the amount of the recoupment by Owen. There was an allegation in that regard in the plea, but immediately after such allegation there followed in the plea the statement: "In the interval between December 1, 1918, and September 1st, 1921, the market value of said lands had greatly depreciated in value and were worth

$7000.00 dollars on said last-mentioned date. Respondent shows that the said plaintiff breached said contract on December 1, 1918, and continued to breach said contract continuously until September 1st, 1921, and on account of said breach defendant has been injured and damaged eight thousand dollars ($8,000.00) or more. Respondent shows that on the first day of December, 1918, said lands were reasonably worth twenty thousand dollars ($20,000.00), this being the market value of said lands, and that on September 1st, 1921, said lands had depreciated in value and were only worth $7000.00 dollars." The trial judge in the charge made no mention of loss by failure of the contract for resale. The following was given in charge, as the rule by which the jury was to be guided in estimating the damages, if any: "A damage is compensation for injury done. The rule by which you would measure the damage in this sort of case is the difference between the market value of the land at the time this contract obligated the plaintiff to convey it to the defendant and the market price at the time that the plaintiff offered to perform his contract, if he has offered to perform it."

2. Plaintiff in certiorari complains that the Court of Appeals erred in refusing to follow the decision of this court in the case of *King* v. *Brice,* 145 *Ga.* 65 (3) (88 S. E. 960), "holding that 'The measure of damages for a breach of contract of sale of land is the difference between the contract price and the market value of the land at the time of the breach,' and erred in holding (if under the proven facts the defendant could recoup at all or more than nominal damages) the defendant's recoupment was not limited to the difference between the contract price and the market value of the land at the time of the breach." The rule laid down in *King* v. *Brice* is now the well settled rule in this State in cases to which it applies. If, therefore, the rule is applicable to the facts of this case and the Court of Appeals refused to follow it, a reversal of the judgment is required. In that case there was a refusal on the part of the purchaser to perform the contract. It was not a matter of delay in carrying out a portion of the contract, but the refusal was to perform the contract in its entirety. The purchaser apparently was never in possession and exercised no rights of ownership. In the case now before us the purchaser went into possession of the land agreeably to the terms of the contract between the parties, and continuously exercised acts of ownership from that time until the

trial.   There was no suggestion of a desire on the part of the purchaser to surrender possession and ownership to the seller, electing to rescind the contract on account of a breach thereof by the seller.   The purchaser remained in possession, but the seller did not perform that part of his contract which obligated him to execute and deliver a deed to the purchaser on December 1st, 1918. Delivery of the deed was delayed until 1921, after which suit was brought against the purchaser for the balance of the agreed price. By reason of the delay in the matter of making a deed the purchaser was deprived of the power to exercise one important right of ownership, that is, the right to dispose of the property which he had purchased.   The right of disposition when and how he pleased was, of course, necessary to a complete ownership.   The question then is whether, under the facts of this case, the Court of Appeals was bound to follow the rule announced in *King* v. *Brice*.   The code declares that "Damages are given as compensation for the injury sustained."   Civil Code (1910), § 4390.   Is the injury to the purchaser the same whether the seller breaches the contract in its entirety, refusing possession as well as the execution of a deed, as it is when he surrenders possession in accordance with the contract but breaches the contract in the matter of execution and delivery of the deed?   We think the rule is not the same; and therefore the court did not err in failing to apply the rule stated in *King* v. *Brice*.

3.   The ground of the petition designated as " (c) " complains that the Court of Appeals erred, "In holding and deciding that it was not reversible error for the trial-judge to charge the jury that if the plaintiff breached the contract by refusing to make a deed at the time he was obligated by the contract to make it, but later tendered the deed, the measure of damages which the defendant might recoup against the plaintiff's action was the difference between the value of the land on the date that the deed should have been made and its value at the time when the plaintiff tendered the deed."   Under the facts of this case the rule applied by the trial judge and approved by the Court of Appeals was erroneous, and requires a reversal of the judgment refusing a new trial.   It was erroneous because the jury should have been instructed to consider and make due allowance for the sale of lumber from the land, in fixing the market price of the land in 1921, and also that under the

contention of the defendant the evidence in regard to a resale of the land could only be considered on the question of market value. The defendant expressly disclaimed any effort to recover for loss of profits. The market value of the land in September, 1921, should be fixed by adding the value of the timber taken therefrom to the value of the land at that time. If the land sold had been a city lot with an expensive house thereon and the purchaser had removed the house, the justice of the rule would be obvious. It must be remembered that the vendee did not elect, as was his legal right, to rescind the contract on account of the vendor's breach. If he had elected to do that, the rule in *King* v. *Brice* would have been applicable. The fundamental rule for the recovery of damages is as stated in our code, to wit: "Damages are given as compensation for the injury sustained." In many classes of cases, owing to the peculiar facts, a more specific rule has been established; as, for instance, in the case of *King* v. *Brice,* supra, where the breach of contract for the sale of land was total. Many instances of partial breach of such contracts may occur. Compare *Kerley* v. *Richardson,* 17 *Ga.* 602; *Richardson* v. *Kerley,* 22 *Ga.* 62; *Fernander* v. *Dunn,* 19 *Ga.* 497 (65 Am. D. 607); *Hull* v. *Harris,* 64 *Ga.* 309; *Corbally* v. *Hughes,* 59 *Ga.* 493; *English* v. *English,* 69 *Ga.* 636. Where there is a contract for the sale of land, some one or more features of the contract may be breached without breaching the entire contract. The seller may surrender possession, control, and the right of ownership to the purchaser, who may exercise all of these rights; and yet, as in this case, the seller may breach that part of the contract which obligated him at a specified time to execute a deed of conveyance, which is written evidence of the title of the purchaser. That breach of course deprives the purchaser of an important right, and may injure him to a more or less degree. Whatever that injury may be, if caused without his fault and through the fault of the seller, the purchaser has the right, under the law, to be compensated by the recovery of damages. "In case of the breach of an indivisible contract, where there is not a total breach of contract, the damages of the plaintiff will be such an amount as will compensate the plaintiff for the late or defective performance of the defendant. It may, however, appear subsequently that the defendant will never perform, either because of his own permanent unwillingness to do so, or because

his delay is so great before he becomes willing to perform that the plaintiff is justifiably unwilling to allow him to perform thereafter." 3 Williston on Contracts, 2337. Under the facts of this case the seller later offered to perform, and the purchaser at no time indicated an unwillingness to allow the seller to perform, or an unwillingness upon his part to perform the contract. We have sought thoroughly for precedents among decided cases on the question of the measure of damages, and find no case in the reports of this court, and after a particularly thorough investigation we find only one case that approximately resembles the facts of this case. Violet v. Rose, 39 Neb. 660 (58 N. W. 216), closely resembles this case and appears to be an exceedingly well-considered case. There the rule applied for measuring the damages for a partial breach of contract for the sale of land is the same as that applied by the trial judge in this case and approved by the Court of Appeals. There is, however, one important difference in the facts. In the case of Violet v. Rose, while it appears that possession of the premises was surrendered to the purchaser about eight months after the execution of the contract of sale, it does not appear that he had done anything which would decrease the market value of the land and which should be considered in fixing the then value. In the case before us it appears that the purchaser went into possession of the land at or about the time contemplated under the terms of the contract and has been continuously in possession since that time. As such owner of the land he has cut and sold lumber variously estimated in value from $4600 to $8000. As the fundamental rule, under the law of this State, is that the award of damages should be compensation for injury, which means fair and just compensation, this amount which the purchaser took from the land should have due weight in considering the amount of damages awarded at the time of the trial, since the purchaser had already, previously to the trial, and during the time in which there was delay in the execution and delivery of the deed of conveyance, received the benefit derived from the sale of the lumber. This mere fact of cutting and removing such an amount of timber from four hundred acres of land might well, in itself, be sufficient to considerably reduce the market value of the land. In order to consider whether the rule applied by the trial court, under the facts of the case, is fair and just, we will further examine the facts and the

rule. The rule applied, as stated above, as the proper measure of damages, was the difference between the market value of the land at the time of the breach and the value of the land at the time when the deed was tendered. The breach occurred December 1, 1918. The deed was tendered September 1, 1921. There was evidence tending to show that the value of the land on December 1, 1918, was $20,000, and that the value of the land on Sept. 1, 1921, was $6000 to $7000, making a difference of at least $13,000, which was the legitimate amount of damage which should have been found as a recoupment if the rule applied was, without qualification, the correct rule. The contract price of the land was $12,000. Under the rule applied, and strictly according to the evidence, the seller would have been due to the purchaser $1000 more than the total aggregate purchase-price. Added to this, but not recognized in the charge of the court, was the sum derived from the sale of lumber at the minimum figure, under the evidence, $4600. During all the time the purchaser was in possession of the land, presumably deriving the usual rents and profits. Under the verdict the purchaser actually received the benefit of the $8000 which the jury allowed as a recoupment, and $4600 received from the sale of lumber, making a total of $12,600, or $600 in excess of the agreed price of the land. Had the jury strictly followed the evidence in the case under the rule applied by the court, they could have allowed the purchaser $13,000 as damages, being the difference between the value of the land at the time of the breach and the value at the time the deed was tendered, and adding to this $4600 which he had received from the sale of lumber the total would amount to $17,600. We can not think that this would have been the proper measure of damages for the mere delay in executing a deed to land, the possession of which the purchaser enjoyed from the date contemplated in the contract, exercising at all times every right of ownership save those to which a deed of conveyance was essential. Moreover, the evidence in regard to the resale of the land to Huff, considered merely for the purpose of showing market value, also showed that the rescission of that contract, that is, the release of Huff, appeared to be voluntary. The contract was not introduced, and it can not be said that a release of Huff was necessary as a matter of law. And furthermore, as already stated, under the evidence it appears quite probable that Huff would have been unable

to carry out his contract; so that under proper instructions the jury might have so found. When we examine the evidence with regard to the resale of the land, we find that it is not certain as to the terms nor as to the financial responsibility of the proposed vendee. The evidence tends to show that the defendant, Owen, in October, 1918, entered into a contract to sell the land to Huff for the sum of $20,000, Huff paying $1000.00 to Owen at the time this agreement was made. A written contract was drawn up, but when the sale was abandoned the writing was destroyed. The evidence as to the financial responsibility of Huff did not show with any degree of certainty that Huff would or could ever have paid the full $20,000 as he agreed to do. Upon the contrary it appears that at the time of the trial of this case in 1921 Huff was insolvent. The sale was not a cash transaction. A little more than half, $11,000, of the purchase-price was to run for ten years. Huff owned 197 acres of land which before the trial of this case had been sold to satisfy creditors. Thus we think that under the evidence the facts in regard to resale were not sufficient to afford any basis for a recovery even if the vendor, Mitchell, had known at the time of the sale to Owen that it was the purpose of the latter to resell. "Profits which the obligee in a bond for titles would have made on a contract which he, at the time the bond was executed, had agreed upon for a sale of the premises to a third person, are not recoverable in an action upon the bond or in a plea of recoupment, unless the obligor had notice of such contract at the time of executing the bond, or certainly not unless notice came to him before he made any breach of its conditions." *Sanderlin* v. *Willis,* 94 *Ga.* 171 (3) (21 S. E. 291); *Orr* v. *Farmers' Alliance Warehouse &c. Co.,* 97 *Ga.* 241 (4) (22 S. E. 937). In Lynch v. Wright, 94 Fed. 703, with reference to the question, Judge Townsend said: "The evidence as to such alleged sale is uncertain and insufficient. The contract is not offered in evidence, and it does not definitely appear what the written agreement was which is said to have been lost, nor why no copy thereof was produced by complainant. But irrespective of this question, the damages for the failure to resell were remote or speculative in character, and were not such as would naturally have resulted from said breach. In such cases the rule is well settled that only the natural and ordinary damages can be recovered, and that special damages resulting from a failure to

make a resale can only be recovered where the contract for resale was brought to the knowledge of the defendant, and where, by reason of his special knowledge of the circumstances, he impliedly undertakes, in case of his failure to make the conveyance, to pay such special damages by way of indemnity." See authorities cited. If this evidence is offered merely to show market value, then the jury should be instructed to consider in connection therewith the financial responsibility of the proposed purchaser and all other facts appearing in evidence which may throw light on the probability of the actual payment of the amount offered for the resale. There may be cases under the facts of which the rule applied by the trial court as the measure of damages may be appropriate and applicable, but under the facts of this case we think it was error to apply the rule without qualifying it, at least to the extent that in finding the value of the land at the time when the deed was tendered, September, 1921, the value of the timber taken from the land since the purchase should have been added to its then value. The difference between the value thus fixed and the value on December 1st, 1918, would show the amount of damages recoverable by Owen because of the delay in receiving his deed according to the contract. *Mobley* v. *Lott,* 127 *Ga.* 572 (56 S. E. 637), was a suit for damages because a vendor of land had refused to fulfill his contract. The breach was entire. The rule applied for estimating damages was the same as that followed in *King* v. *Brice,* supra. In the opinion it was said: "The law aims to place the injured party, so far as money can do it, in the position he would have occupied if the contract had been fulfilled. Such is the rule as recognized in this State." How to do this is the difficult problem. It would be ideal if this court could announce a clear and easily applied rule for placing the injured party in "the position he would have occupied had the contract been fulfilled." Such a rule ought not to be unjust to the defendant, but should do exact justice to both parties. Perfection is rarely, if ever, attainable. No conceivable rule is likely to do exact justice in all cases. What position would the vendee in this case have occupied had the contract been fulfilled? He would have been in possession of the identical land bought by him, with all rights of ownership, including the deed, as per contract. He was and has been in full undisputed possession, but did not receive the deed. He exercised full use of

and authority over the land, except written evidence of title. In respect to the deed the vendor breached the contract on December 1, 1918, and continued to breach it until September 1, 1921, when he offered to complete the contract. In the meantime the value of the land had decreased. At any time after December 1, 1918, the vendee, had he so elected, could have rescinded the trade, surrendering possession; or he could have sued for specific performance. He did neither. He remained in possession, exercising rights of ownership, such as contracting to sell and cutting timber and selling lumber from the land. This he had a legal right to do. Having done so, he was not entitled to recover damages as for a breach of the entire contract, and thus to enjoy the fruits of such rights of ownership as he did exercise, and in addition to recover full damages as if he had been denied all rights under his contract of purchase. Such a rule would be unjust to the adversary party, although the latter was at fault. The rule which we have approved above seems to do substantial justice to the parties, and to be consistent with the requirement as stated in *Mobley* v. *Lott*.

4. As to the ground of the petition designated "(d)" the statement made in the headnote is sufficient.

5. The brief for plaintiff in certiorari contains the following statement with reference to the rule of this court regarding petitions for certiorari: "So much of this rule as relates to the disposition of the case if the certiorari is granted seems to be in conflict with the constitutional provision (art. 5, sec. 2, par. 5 (Code § 6502), as amended in 1916)." As authority for this contention the case of *Gulf Paving Co.* v. *Atlanta,* 149 *Ga.* 114 (99 S. E. 374), is cited. The rule passed by this court applicable to petitions for certiorari, effective January 1, 1923, is, in so far as material to the question, as follows: "In considering the question of the grant of the petition for certiorari, and, if granted, in disposing of the case, this court will only consider the questions raised in such petition." See 153 *Ga.* 890. A careful consideration of that portion of the rule quoted and the provision of the constitution will plainly show that there is no conflict between them. The section of the Georgia constitution mentioned above provides, in so far as material, as follows: "It shall also be competent for the Supreme Court to require, by certiorari or otherwise, any case to be certified to the Supreme Court from the Court of

Appeals for review and determination, with the same power and authority as if the case had been carried by writ of error to the Supreme Court." In the *Gulf Paving Co.* case, supra, this court said: "Where under the constitutional amendment of 1916 a writ of certiorari has been obtained to review a judgment of the Court of Appeals, the Supreme Court has jurisdiction to rule upon the assignments of error in the bill of exceptions from the trial court from which the case was carried to the Court of Appeals." In the opinion it is made to appear that this ruling is in harmony with the Supreme Court of the United States. From the Georgia constitution and the interpretation placed upon it by this court it indisputably appears that the Supreme Court is invested with the "jurisdiction" to review and determine any or all of the assignments of error in the bill of exceptions from the trial court, and that for the purpose of review and determination the power and authority possessed by the Supreme Court is the same as possessed by the Court of Appeals to which the case was originally carried. The rule adopted by this court in no way denies or limits the power and jurisdiction delegated to the court in terms by the constitution. It has long been a rule of practice in this court that assignments of error in a bill of exceptions not mentioned or insisted upon in the brief of plaintiff in error will be considered as abandoned. This is a manifestly legitimate and fair conclusion. Upon the same theory, but, we think, standing upon even a more unassailable basis, when the plaintiff in error has had one review of his case in the Court of Appeals, and being dissatisfied files a petition for certiorari in this court, in which he does not complain of error in all of the rulings of the Court of Appeals but only in specified rulings, it is fair to assume that he submits to those rulings of the Court of Appeals upon which error is not assigned. Moreover, the Civil Code (1910), § 6140, having reference to bills of exceptions, declares that "the plaintiff in error shall plainly and specifically set forth the errors alleged to have been committed." This has been the statute law of Georgia for many years, and, so far as we are aware, has universally been accepted as just and essential to the proper administration of justice. In the same spirit and for the same reason the rule of this court quoted above requires: "It will not be sufficient to set out the contentions and assignments of error made in the original bill of exceptions or

motion for a new trial, but it shall be necessary to plainly and specifically set forth the errors alleged to have been committed by the Court of Appeals." It may or may not be useful to state in this connection, that, the petition for certiorari having been granted by the Supreme Court, the assignment of error on the ruling of the Court of Appeals must necessarily be considered in connection with the corresponding and appropriate assignments of error made on the rulings of the trial court in the bill of exceptions or otherwise. Obviously the correctness or incorrectness of the ruling of the Court of Appeals could not be determined without a consideration of the assignments of error on the rulings of the trial court to which the former pertained. Accordingly no question will be considered by this court in the present case except such as is plainly specified in the petition for certiorari as having been committed by the Court of Appeals. To follow a different rule, that is, to review and determine every question made in all cases as originally presented to the Court of Appeals, would be to consume a vast amount of time and labor much needed by the court for contested issues, and to subject ourselves to the just criticism that in a great majority of instances time and labor was wasted upon questions no longer disputed or contested by the losing party. See *King* v. *State*, 155 *Ga.* 707, 712 (118 S. E. 368).

*Judgment reversed. All the Justices concur.*

HINES, J. I concur in the result reached. I think the measure of damages laid down by the Court of Appeals is not the correct rule. On the contrary I am of the opinion that the measure of damages for a breach of contract of sale of land is the difference between the contract price and the market value of the land at the time of the breach. *King* v. *Brice*, 145 *Ga.* 65 (3) (supra). Any rule fixing a smaller measure of damages would tempt the vendor, in any case where the property increased in value, to violate his contract. *Bryant* v. *Hambrick*, 9 *Ga.* 133. From this temptation we should deliver vendors. If the vendee is admitted into possession of land, and after the breach of the contract of sale cuts timber from the land, his damages for the breach of the contract of sale should not be lessened by the value of such timber, because that would be taking from the vendee something to which he was entitled under his contract of purchase, and giving it to the vendor.

## ON REHEARING.

BECK, P. J., HILL and GILBERT, JJ. The ground of the petition designated as "(c)" is quoted in full in the third headnote. One ground of the motion for a new trial complains that the trial judge, in charging the jury, gave them the rule stated in the third headnote as the measure of damages. The Court of Appeals affirmed the judgment of the trial court overruling the motion for a new trial. It should be noticed that in the petition for certiorari on this ground no specific error is pointed out. It is merely alleged that the Court of Appeals erred in so "holding and deciding." In the ground preceding this, (b), which is treated in the preceding division of the opinion, the petitioner for certiorari states that the Court of Appeals erred in refusing to follow the decision of the Supreme Court in the case of *King* v. *Brice,* 145 *Ga.* 65 (3) (supra), and erred in holding that under the proved facts (if the defendant could recoup at all or more than nominal damages) the defendant's recoupment was not limited to the difference between the contract price and the market value of the land at the time of the breach. Considering the two paragraphs together, it will be seen that the contention of the petitioner is that the error of the Court of Appeals consists in adopting the rule laid down by the trial court, when it should have decided that the rule was the same as that applied in *King* v. *Brice.* Referring to the motion for a new trial we find that the only assignment of error on the charge of the trial judge on this question is as follows: "Said charge is error for the reason that the measure of damages the plaintiff insists is the difference between the contract price and the market value of the land at the time the plaintiff contracted to make the deed or when the defendant took possession of the land, to wit, January 1st, 1919." To fully understand and decide this question as made, we must look to the petition for certiorari alleging error on the part of the Court of Appeals, together with the assignment of error made in the motion for a new trial. The latter shows the question presented to and ruled upon by the trial judge and the former shows the judgment rendered by the Court of Appeals. In the judgment rendered by this court on January 20, 1925, the judgment of the Court of Appeals was reversed on this ground of the petition for certiorari. In doing so we stated what we considered the correct rule to be applied as the measure of damages under the

facts of the case as we then understood them.  On all other grounds of the petition for certiorari the judgment of the Court of Appeals was affirmed.  The defendant in error filed a motion for rehearing based on the grounds, first, that we had overlooked some of the facts on which the judgment was based, and that a correct understanding of the facts would have required a different judgment; second, that we had overlooked the fact that the only error assigned on the charge of the court was: "Said charge is error for the reason that the measure of damages the plaintiff insists is the difference between the contract price and the market value of the land at the time the plaintiff contracted to make the deed or when the defendant took possession of the land, to wit, January 1st, 1919;" that while this was the only exception taken to the charge, this court had based its reversal upon another theory not embraced in the exception.  Upon a re-examination of the record in the light of the motion for a rehearing we find that the latter point is well taken, and that under the law (Civil Code, §§ 6139, 6203), the exception made to the charge narrowed the question so that the court was not authorized to decide what is the true rule.  Our authority was limited to deciding whether or not the exception actually made was meritorious.  We have ruled in the preceding division of the opinion that the measure of damages as stated in the case of *King* v. *Brice* was not applicable to the facts of this case, and, since no other error in the charge is pointed out, it follows that the court should have affirmed the judgment of the Court of Appeals.  While we are of the opinion that the rule stated by this court in the decision as at first delivered is the correct rule under facts applicable as we then believed them to be in this case, nevertheless, in reconsidering the question, we are constrained to hold that we went beyond the exception made and were not authorized to reverse the judgment of the Court of Appeals.  Moreover, if the assignment of error on the ruling of the Court of Appeals as stated in paragraph (c) be considered alone without reference to other portions of the petition and without reference to the motion for a new trial, it will amount to a complaint that the trial judge misstated the law. The effect of such an assignment has been thoroughly considered and dealt with in *Anderson* v. *Southern Ry. Co.,* 107 *Ga.* 500 (4), 510 (supra).  In the light of what was there said, when the charge excepted to is considered without reference to the facts in the case,

45

it can not be said that the charge was abstractly erroneous. See Violet v. Rose, 39 Neb. 660 (supra). For these reasons the judgment of reversal should be vacated and a judgment of affirmance rendered.